Pearson, C.- J.
 

 This court is of opinion that the petitioner is. not entitled to demand any part of the amount claimed by him as his salary. He rests his claim on the allegation that “he had never been required to take an oath, and never did take an oath to support the Confederate Constitution or Government.”
 

 In our view of the subject, if he had taken the oath to support the Constitution of the Confederate States, he would have had a stronger ground of claim than that which he now occupies; for it is enacted (Acts of 1861, ch. 25,) “All Judges of the Superior and Supreme Courts, and all Justices of the Peace, and all
 
 other persons
 
 holding any office in this State, and required to take an oath of office before proceeding to discharge the duties of such office, shall be required, before proceeding
 
 further
 
 in the discharge of the duties of office, to take an oath to support the Constitution of the Confederate States of America.” Here there is a public statute of which all persons are bound to take notice. There can be no doubt that this statute embraces the office held by •the petitioner; it was one of “ profit and trust,” and one the. incumbent of which ,was, by law, required to take an oath of office. Had Mr. Wiley taken the oath and discharged the duties of his office in reference to the
 
 de facto
 
 Government of the State, as those duties concern matters purely civil, and were in no point of view connected with the war, it would have presented a strong case, under the doctrine of “
 
 quantum
 
 meruit/’ for, in point of fact, the rightful Govern
 
 *174
 
 ment of the State, although suspended by force and usurpation, did receive benefit from the labor of the civil officers of the wrongful Government. For instance, a Judge takes the oath to support the Constitution of the Confederate States and rides the circuits, administering the law and keeping everything quiet, the war to the contrary notwithstanding. The people in Convention assembled ratify and declare valid all judicial acts done during the wax, withoxxt intimating an opinion, it would seem, as the rightful State Government takes the benefit of his labor, that he is entitled,
 
 ex bono et
 
 cequo, to be paid for his services ?
 

 Bxxt Mx\ Wiley stands in a different attitude. He declined to take the oath of allegiance to the wrongful
 
 de facto government
 
 and of course could not sex-ve it; and, as a further
 
 matter of
 
 coux’se, he could not serve the rightful State gov-ex-nment, which was then suspended, being
 
 evicted from
 
 the exercise of its functions by war and usurpation. So Mr. Wiley can claim nothing of either government, for he did not render the required service to eithex.
 

 Again, Mr. Wiley was elected by the Legislature of the wrongful government ixx 1864, for a term of two years, to begin July, 1865, but he was never inducted into the office, for, as he avers, he did not take the oath of office required by law. Then followed the surrender,
 
 and,
 
 as is said in
 
 Hughes' case, ante
 
 p. 68, the political death of all of the officers of theState, to all intents axxd purposes, as if they had died a natui’al death. To this may be superadded that an ordinance of the Convention of 1865 declax-ed all offices vacant and required new elections.
 

 The petitioner was not re-elected, but claims a right to fill the office up to March, 1866, whexx the office was abolished, on the ground of his electioxx in 1864 by the Legislature of a wrongful government, to which he had never given his allegiance! And yet he now wishes to rely upon the action
 
 *175
 
 of that wrongful government as the ground of his claim to the office and the emoluments thereof.
 

 Per Curiam. Judgment below reversed. Judgment here that defendants go without day and recover their costs.